IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Judge Philip A. Brimmer**

Civil Action No. 08-cv-01691-PAB

ROSE L. PEREZ,

    Plaintiff,

v.

MICHAEL J. ASTRUE,
Commissioner of Social Security,

    Defendant.

_____

**ORDER REVERSING DECISION OF THE ADMINISTRATIVE LAW JUDGE**
_____

## I. INTRODUCTION

This matter comes before the Court on plaintiff Rose L. Perez's complaint [Docket No. 1], filed August 8, 2008. Ms. Perez seeks review of the final decision of defendant Michael J. Astrue (the "Commissioner") denying plaintiff's claim for Disability Insurance benefits and Supplemental Security Income benefits under Titles II and XVI of the Social Security Act (the "Act"). The Court has jurisdiction to review the Commissioner's final decision under 42 U.S.C. § 405(g).

## II. BACKGROUND

On January 27, 2004, Ms. Perez filed an application for supplemental benefits, and on October 28, 2004 she filed an application for social security benefits. R. at 25. She alleges that she was disabled since April 17, 2003. R. at 676. After Ms. Perez's claim was denied at the initial level, she requested a hearing, which was scheduled for

November 1, 2005.  R. at 62.  However, a full hearing did not take place on that date because the Administrative Law Judge ("ALJ") ordered Ms. Perez to undergo a mental consultative examination and remanded her claims to the agency.  R. at 578-79.  Her claims were again denied by the Social Security Administration.  R. at 58.  Ms. Perez requested a hearing, which an ALJ conducted on July 11, 2006.  Plaintiff was represented by counsel.  R. at 676-736.  In addition to Ms. Perez's testimony, the ALJ received the testimony of a Vocational Expert ("VE").  R. at 701-703.  At the end of the hearing, the ALJ requested additional records from Ms. Perez and ordered another consultive examination.  R. at 709.  Ms. Perez then requested a supplemental hearing, which took place on March 2, 2007.  *Id.*  A second VE testified at the supplemental hearing.  R. at 721-723.  On April 1, 2007, the ALJ issued a decision denying plaintiff's application.

Plaintiff requested the Social Security Administration's Appeals Council ("Appeals Council") to review the ALJ's decision.  R. 18.  On June 11, 2008, the Appeals Council denied plaintiff's request for review of the ALJ decision.  R. at 10-13.  Therefore, the ALJ's April 1, 2007 decision stands as the Commissioner's final decision on this matter.  Plaintiff filed a timely appeal with this Court, making the Commissioner's final decision reviewable.  *See* 42 U.S.C. § 405(g) (2006); *Bowman v. Astrue*, 511 F.3d 1270, 1272 (10th Cir. 2008).

## III. ANALYSIS

### A. Standard of Review

Review of the Commissioner's finding that a claimant is not disabled is limited to determining whether the Commissioner applied the correct legal standards and whether the decision is supported by substantial evidence in the record as a whole. *Angel v. Barnhart*, 329 F.3d 1208, 1209 (10th Cir. 2003). "Substantial evidence is more than a mere scintilla and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Flaherty v. Astrue*, 515 F.3d 1067, 1070 (10th Cir. 2007). Moreover, "[e]vidence is not substantial if it is overwhelmed by other evidence in the record or constitutes mere conclusion." *Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992).

The Court will not "reweigh the evidence or retry the case," but must "meticulously examine the record as a whole, including anything that might undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." *Flaherty*, 515 F.3d at 1070. The district court may not reverse the ALJ simply because it may have reached a different result based on the record; the question instead is whether there is substantial evidence showing that the ALJ was justified in her decision. *See Ellison v. Sullivan*, 929 F.2d 534, 536 (10th Cir. 1990). In addition to a reversal for lack of substantial evidence, a district court may reverse the Commissioner's final decision where the ALJ failed to apply the correct legal test. *Thompson v. Sullivan*, 987 F.2d 1482, 1487 (10th Cir. 1993).

## B. The Five-Step Evaluation

A person is disabled within the meaning of the Act if he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A) (2006). Furthermore,

> [a]n individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 423(d)(2)(A) (2006).

The Commissioner has established a five-step sequential evaluation process to determine whether a claimant is disabled. *Williams v. Bowen*, 844 F.2d 748, 750 (10th Cir. 1988); 20 C.F.R. § 416.920. The steps of the process are:

> (1) whether the claimant is currently working; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets an impairment listed in appendix 1 of the relevant regulation; (4) whether the impairment precludes the claimant from doing his past relevant work; and (5) whether the impairment precludes the claimant from doing any work.

*Trimiar v. Sullivan*, 966 F.2d 1326, 1329 (10th Cir. 1992) (citing 20 C.F.R. § 404.1520(b)-(f)). A finding that the claimant is disabled or not disabled at any point in the five-step review is conclusive and terminates the analysis. *Casias v. Sec'y of Health & Human Servs.*, 933 F.2d 799, 801 (10th Cir. 1991).

The claimant has the initial burden of establishing a case of disability. However,

"[i]f the claimant is not considered disabled at step three, but has satisfied her burden of establishing a prima facie case of disability under steps one, two, and four, the burden shifts to the Commissioner to show the claimant has the residual functional capacity (RFC) to perform other work in the national economy in view of her age, education, and work experience." *See Fischer-Ross v. Barnhart*, 431 F.3d 729, 731 (10th Cir. 2005); *see also Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987). While the claimant has the initial burden of proving a disability, "the ALJ has a basic duty of inquiry, to inform himself about facts relevant to his decision and to learn the claimant's own version of those facts." *Hill v. Sullivan*, 924 F.2d 972, 974 (10th Cir. 1991).

### C.  The ALJ Decision

In his April 1, 2007 decision, the ALJ reached step five in the sequential five-step analysis. At step one, the ALJ concluded that plaintiff had not engaged in substantial gainful activity at any time relevant to his decision. R. at 27. At step two, the ALJ determined that the plaintiff had the following severe impairments: a mood disorder, obesity, chronic obstructive pulmonary disease ("COPD") and depression. R. at 27. At step three, the ALJ concluded that Ms. Perez did not have an impairment or combination of impairments that met or medically equaled the listed impairments in 20 C.F.R. § 404, Subpart P, Appendix 1. R. at 27.

The ALJ then turned to the task of determining plaintiff's RFC. The ALJ found that Ms. Perez retained:

> the residual functioning capacity to lift and carry up to 20 pounds, sit for 15 minutes at a time for a total of 8 hours in an 8-hour day, stand for 15 minutes at a time for a total of 2 hours in an 8-hour day, walk for 15 minutes at a time for a total of 1 hour in an 8-hour day, and occasionally climb ramps or stairs, balance,

>kneel, stoop, crouch or crawl. The claimant can frequently use her upper extremities for work activity, but should never climb ladders, ropes or scaffolds. She can occasionally work at unprotected heights and around moving machinery, operate a motor vehicle (in the context of job duties), and work in environments containing humidity, wetness, dust, odors, fumes, pulmonary irritants, vibrations, and extreme heat or cold. Mentally, in giving the claimant the benefit of the doubt, she is capable of understanding, remembering and carrying out the type of instructions that can be learned on the job in no more than 30 days.

R. at 37.

In the step four determination, the ALJ found that the plaintiff was not able to perform her past relevant work. R. at 37. At step five, the ALJ cited the VE's testimony in finding that, in light of the plaintiff's age, education, work experience, and RFC, there were at least three jobs the claimant could perform: cashier, assembler of small products, and final assembler. R. at 38. The ALJ concluded that significant numbers of jobs which Ms. Perez was capable of performing existed in the national economy, and therefore, Ms. Perez's claim failed at step five. *Id.*

### D.  Plaintiff's Objections to the ALJ Decision

In her appeal, Ms. Perez objects to the ALJ's finding of no disability on three grounds: (1) that the ALJ erred at step two of the analysis in finding that Ms. Perez did not have a medically determinable impairment of fibromyalgia; (2) that the ALJ's hypothetical questions to the VE were flawed; and (3) that the ALJ's findings regarding Ms. Perez's credibility are not supported by substantial evidence. *See* Pl.'s Opening Br. [Docket No. 15] at 8-9.

### E.  Determination of Severe Impairments at Step Two

Ms. Perez argues that the ALJ erred at step two of the five-step process by finding that she did not sustain "her burden of proving that she has a medically determinable impairment of fibromyalgia. . . ."  R. at 32.  Ms. Perez contends that the ALJ's treatment of the medical evidence in her case shows that he "misapprehended the nature of the disease of fibromyalgia."  Pl.'s Opening Br. at 10.

At step two, a claimant must show that she has an "impairment or combination of impairments which significantly limits [her] . . . ability to do basic work activities."  20 C.F.R. § 404.1520(c).  The claimant not only show "the mere presence of a condition or ailment," but also demonstrate that the impairment, alone or in combination with others, has a "serious impact" on the claimant's ability to work, making it "severe."  *Hinkle v. Apfel*, 132 F.3d 1349, 1352 (10th Cir. 1997).

The ALJ concluded that Ms. Perez did not have a medically determinable impairment of fibromyalgia because "the record [was] almost completely absent of any signs, symptoms or clinical or laboratory findings to support a diagnosis of fibromyalgia. . . ."  R. at 32.  The ALJ reasoned that while Ms. Perez complained of all over body pain associated with fibromyalgia for years, her records "consistently documented essentially normal examination physical and neurological findings, without any signs of the requisite tender or trigger points, necessary to establish a diagnosis of fibromyalgia."  R. at 30.  Although the ALJ noted that Ms. Perez's treating physicians "reported that the claimant had fibromyalgia, it appears that their conclusions were based on the claimant's report of her medical history rather than on any objective findings."  R. at 31.

As the Tenth Circuit has explained, "clinical signs and symptoms supporting a diagnosis of fibromyalgia under the American College of Rheumatology Guidelines include 'primarily widespread pain in all four quadrants of the body and at least 11 of the 18 specified tender points on the body.'" *Moore v. Barnhart*, 114 F. App'x 983, 991 (10th Cir. 2004) (citing *Green-Younger v. Barnhart*, 335 F.3d 99, 107 (2d Cir. 2003)). Ms. Perez's file includes two records suggesting she was in fact tested for the trigger points associated with fibromyalgia. First, in February 2006, Ms. Perez went to see a specialist in rheumatology named Dr. Srock. R. at 539. Dr. Srock found that Ms. Perez had "18 tender points but actually had pain with palpation of all of her major muscle groups," and diagnosed the claimant with a "history of fibromyalgia." *Id.* Second, in July of 2005, Ms. Perez's primary physician Dr. Christie noted that Ms. Perez had "positive fibromyalgia points" during a physical exam and assessed Ms. Perez as having fibromyalgia in several medical records. R. at 392.

The ALJ's decision discussed Dr. Srock's assessment of Ms. Perez's trigger point tenderness, but it did not mention that Dr. Christie also found Ms. Perez suffered from positive tender points. As for Dr. Srock's trigger point testing, the ALJ assigned "very little weight to Dr. Srock's opinion" because, despite Dr. Srock's observation that Ms. Perez had 18 trigger points, Dr. Srock's "objective findings were essentially normal," and furthermore, Dr. Srock recommended that Ms. Perez engage in exercise such as walking, Pilates, and Yoga. R. at 31. Further, the ALJ reasoned that Dr. Srock only diagnosed Ms. Perez with a "history of fibromyalgia," which suggested that her fibromyalgia was no longer an active impairment. R. at 32-33. The ALJ's decision to assign little weight to Dr. Srock's opinion, however, was not in error, as the ALJ

considered whether Dr. Srock's opinion was supported by explanations and was consistent with the record as a whole. *See* 20 C.F.R. § 404.1527.

The ALJ did err by failing to consider Dr. Christie's testing of Ms. Perez for tender points in July of 2005. Dr. Christie was Ms. Perez's treating physician for several years, and the opinions of treating physicians are afforded greater weight under the regulations. *See* 20 C.F.R. § 404.1527(d)(2). The ALJ discussed Dr. Christie's treatment of Ms. Perez generally, and discussed later visits with Dr. Christie specifically, but he did not mention that Dr. Christie reported Ms. Perez had positive fibromyalgia points. This omission contradicts the ALJ's conclusion that Ms. Perez's records "consistently documented essentially normal examination physical and neurological findings, without any signs of the requisite tender or trigger points, necessary to establish a diagnosis of fibromyalgia." R. at 30. While an ALJ is not required to discuss every piece of evidence in the record, he must discuss "the uncontroverted evidence he chooses not to rely upon, as well as significantly probative evidence he rejects." *Clifton v. Chater*, 79 F.3d 1007, 1010 (10th Cir. 1996). Here, the ALJ was at least obligated to acknowledge Dr. Christie's tender points assessment and state his reasons for rejecting it, even if he had legitimate reasons for disregarding it.[1]

---

[1] For instance, it is not clear from the record of Dr. Christie's examination that Dr. Christie found Ms. Perez actually had a sufficient number of tender points to allow for a diagnosis of fibromyalgia. The record only clearly shows that Dr. Christie found "positive fibromyalgia points" and included fibromyalgia in her assessment of Ms. Perez. However, the record includes a diagram of Ms. Perez's tender points that could be read as showing she only had six of the possible 18 tender points, and the ALJ may have read the record as showing Ms. Perez did not have the 11 tender points required for a diagnosis of fibromyalgia. Nonetheless, there is no way of knowing from the ALJ's decision if he in fact came to this conclusion, as his decision does not discuss Dr. Christie's tender point testing.

9

Nonetheless, the ALJ's opinion did not rest entirely on his conclusion that Ms. Perez did not have a medically determinable impairment of fibromyalgia.  Instead, the ALJ provided that, even if Ms. Perez did have fibromyalgia, her symptoms were only mild and did not qualify as severe under the regulations.  This conclusion was supported by substantial evidence.  None of the physicians who examined Ms. Perez, including Drs. Christie and Srock, indicated that Ms. Perez's fibromyalgia imposed any restrictions on her ability to work.  *See* R. at 391-392; R. at 539.  As the ALJ noted, Dr. Srock's opinion not did not impose restrictions on Ms. Perez, but noted that she had "full range of motion in the neck and extremities," and suggested Ms. Perez engage in regular exercise.  R. at 32.  Dr. Christie's final documented visit with Ms. Perez in February 2006 suggested similarly.  R. at 517-18.

While the ALJ should have considered Dr. Christie's trigger point testing in determining whether Ms. Perez in fact suffered from fibromyalgia, the Court can "confidently say that no reasonable administrative factfinder, following the correct analysis, could have resolved the factual matter in any other way" than the ALJ did here.  *See Allen v. Barnhart*, 357 F.3d 1140, 1145 (10th Cir. 2004).  The ALJ's error, therefore, was harmless.  *See id.*

### F.  Dr. Leone's Report

At step three of the sequential evaluation process, the ALJ relied on a functional capacity assessment completed in 2005 by Ms. Perez's treating psychiatrist, Dr. Frank Leone.  R. at 35.  The ALJ noted that Dr. Leone reported that Ms. Perez's "depression imposed <u>no or only mild</u> restrictions on her work-related abilities other than moderate

restriction on her ability to carry out complex instructions and make judgments on complex work-related decisions." *Id.*  The ALJ was persuaded by Dr. Leone's findings regarding Ms. Perez's "mental work related abilities" and incorporated his opinions with the findings of "the State Agency physician" in determining the plaintiff's mental RFC.[2] *Id.*  The ALJ determined that Ms. Perez's mental residual functioning capacity was "capable of understanding, remembering and carrying out the type of instructions that can be learned on the job in no more than 30 days."  R. at 37.  This restriction was the only mental health limitation the ALJ included in his hypothetical question to the VE at the second hearing on March 2, 2007.  R. at 723.  The ALJ's ultimate conclusion at step five that Ms. Perez could still work as a cashier was based on the VE's answer to this hypothetical.  R. at 38.

The ALJ's report, however, did not discuss the negative findings in Dr. Leone's report.  While Dr. Leone did find, as the ALJ states, that Ms. Perez had no restrictions in her ability to understand, remember, and carry out simple instructions, Dr. Leone also found that Ms. Perez had moderate restrictions in her ability to carry out complex instructions and to make judgments on complex work-related decisions.  R. at 521.  Dr. Leone explained that these restrictions were supported by his finding that Ms. Perez had "poor concentration due to depression."  R. at 522.  The ALJ did not explain how or

---

[2]  The State Agency physician the ALJ appears to be referring to is Dr. Gayle Frommelt, a psychologist who assessed Ms. Perez's mental functional capacity and found that Ms. Perez was capable of performing work which can be learned in three months or less.  R. at 469.  Although the ALJ does not make his analysis explicit, it appears that he arrived at Ms. Perez's mental RFC by combining Dr. Leone's findings with Dr. Frommelt's estimate that Ms. Perez could do work which could be learned in three months or less.  *See* R. at 37.

11

whether he incorporated these additional findings into Ms. Perez's RFC.  *See* R. at 35, 37.  Moreover, the ALJ also did not discuss Dr. Leone's opinion that Ms. Perez "[m]ay have difficulty with absenteeism due to depression."  R. at 522.

The ALJ did not claim that he was disregarding these opinions and giving them little weight.  Rather, the ALJ stated that he was generally "persuaded" by Dr. Leone's findings.  *See* R. at 35.  The ALJ also did not cite any evidence that conflicted with Dr. Leone's opinions or mental RFC assessment.  "An ALJ is not entitled to pick and choose through an uncontradicted medical opinion, taking only the parts that are favorable to a finding of nondisability."  *Haga v. Astrue*, 482 F.3d 1205, 1208 (10th Cir. 2007).  Where an ALJ accepts some restrictions found by a physician but rejects others without explanation, as the ALJ did here, his opinion is not supported by substantial evidence.  *See id.*

The materiality of the absenteeism restriction is clear from the VE's testimony at the March, 2007 hearing.  R. at 729.  The VE opined that Ms. Perez was capable of performing light unskilled work, or SVP 2 positions, and the ALJ concluded the same in his report.  R. at 729, 38.  At the hearing, Ms. Perez's attorney questioned the VE about the effect of absenteeism on SVP 2 jobs.  The VE estimated that an employee could miss one or two days a month and retain an SVP 2 job, but that any more missed days would result in termination.  R. at 729.  Had the ALJ taken into consideration Dr. Leone's opinion that Ms. Perez may have difficulty with absenteeism, it might have changed his conclusion that her impairment did not preclude her from doing any work.

While it is possible the ALJ considered Dr. Leone's additional restrictions and discounted them based on other evidence in the record, the Court cannot guess at his

reasoning.  Because Ms. Perez could have problems with absenteeism significant enough to disrupt her employment, the Court cannot "confidently say that no reasonable administrative factfinder, following the correct analysis, could have resolved the factual matter in any other way" than the ALJ did here.  *See Allen v. Barnhart*, 357 F.3d 1140, 1145 (10th Cir. 2004).  Therefore, this matter will be remanded.  There is no need to consider the remainder of plaintiff's arguments.

## IV.  CONCLUSION

For the foregoing reasons, the Court finds that the Commissioner's finding that the plaintiff is not disabled under the Act is not based on substantial evidence. Therefore it is

ORDERED that the decision by the Commissioner that the plaintiff is not disabled is REVERSED.  This case is REMANDED to the Commissioner for additional proceedings in accordance with this Order.


DATED November 23, 2010.

                                                BY THE COURT:

                                                s/Philip A. Brimmer
                                                PHILIP A. BRIMMER
                                                United States District Judge